TOWNSHIP OF WALL, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT, v. WATER POLICY AND SUPPLY COUNCIL, DIVISION OF WATER RESOURCES, DEPARTMENT OF ENVIRONMENTAL PROTECTION, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 10, 1974—Decided July 11, 1974.

390

Before Judges COLLESTER, LYNCH and MICHELS.

*Mr. John J. Mangini* argued the cause for appellant (*Messrs. Campbell, Mangini, Foley, Lee & Murphy,* attorneys).

*Mr. William J. Stohler,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. George F. Kugler, Jr.,* former Attorney General of New Jersey).

The opinion of the court was delivered by

COLLESTER, P. J. A. D. The Township of Wall applied to the Water Policy and Supply Council (Council) for permission to use an additional well to provide water for its resident consumers. The Council granted permission subject to the condition that the township read its water meters and bill the users four times a year. The township, which reads its meters and bills its consumers annually, requested a waiver of the condition on the ground that it would increase the cost of its water supply system. The Council denied the request but notified the township that a hearing would be granted if it was requested. At the hearing the township offered testimony to show that its water supply system was "tight" and without leaks, and the increase in costs which would follow if it was required to read its meters and bill its customers quarter-annually. Following the hearing the Council again denied the request for a waiver of the condition. The township appeals.

The Council adopted the requirement for quarter-annual meter reading and billing as a standard condition for approval of diversion of water for water supply in 1967. The Council imposes the standard condition in the interest of water conservation. In its considered judgment quarter-annual meter reading and billing facilitates the early detection of leaks in a water supply system and gives consumers an incentive to reduce water consumption by reminding them of the cost thereof.

The township first contends the Council lacks statutory authority to impose the standard condition and that *N. J. S. A.* 40:62–47 grants the township the power to regulate its water supply system. We perceive no conflict between *N. J. S. A.* 58:1–21 providing that the Council approve applications "with such modifications and subject to such conditions as it may determine should be made therein to protect the water supply * * *," and *N. J. S. A.* 40:62–77 empowering a municipal governing body to pass ordinances it considers necessary and proper, among other things, "for the installation and protection of [water] meters, [and] for fixing and collecting the water rents or prices for water * * *." The Council's standard condition leaves the township free to install and protect water meters and to fix water rents and the method of collecting them. The condition merely requires the township to read meters and bill its customers more frequently than formerly.

Even if a conflict between the statutes was apparent, we are satisfied *N. J. S. A.* 58:1–21 would take precedence. The Legislature could not have intended that the Council be frustrated in successfully discharging its statutory responsibility of conserving the State's water supply. See also *N. J. S. A.* 58:1–10 and *N. J. S. A.* 58: 1–17. It is clear that the Council was established to create policies that would conserve the State's water supply by transcending, when necessary, local ordinances and interests. See *State v. North Jersey District Water Supply Comm'n,* 127 *N. J. Super.* 251, 260–261 (App. Div. 1974).

■ The township further claims that even if the Council possesses statutory authority to make its approval for the diversion of water subject to such condition, the record does not support the necessity for quarter-annual meter reading and consumer billing and its refusal to grant the waiver of such condition was arbitrary, capricious and unreasonable.

We disagree. The Council was not statutorily required to conduct a *quasi*-judicial hearing on the township's request for a waiver. The hearing was granted to afford the township an opportunity to show why its municipal ordinance providing for annual readings and billings should not be amended to comply with the requirements laid down by the Council's standard condition. It was not an adversary trial-type hearing and the Council was not obligated to present evidence to refute that offered by the Township.

■ Although the township presented evidence that its water supply system was "tight" and there was no present leakage, this did not preclude the possibility of future leaks. Moreover, it offered no evidence to refute the Council's position that water conservation would be better achieved by bringing the higher cost of water to the attention of consumers more often. We are satisfied that the Council, with the benefit of its expertise gained from study and experience, would not impose the standard condition unless in its best judgment the potential danger of water shortage throughout the State was sufficient to outweigh the extra cost it entails.

We conclude that the decision of the Water Policy and Supply Council denying the request for a waiver of the condition should be affirmed.